The next case for argument is 15-1310, State of Vermont v. MPHJ Technology. Mr. Farney, may it please the court, my name is Brian Farney and I represent the appellant MPHJ Technology Investments, LLC. This appeal is taken from a decision by the District Court that at Latin Jurisdiction under 28 U.S.C. 1442-A-2, which I will sometimes refer to by a short hand, it's just 1442 because it gets kind of long and I keep saying A-2 all the time. The MPHJ removed the case, the State's amended complaint, on the basis that the amended complaint sought relief in part under Vermont's new anti-patent letter law, which I will refer to as the BFA Act. The District Court concluded that the amended complaint did not seek relief under the BFA Act and therefore 1442 was not implicated. He separately concluded that even if it was implicated, that the removal was not timely. I will present that both of those decisions were an error and do so by presenting four points. First, that 1442, specifically subsection A-2, does apply to patent cases. Second, that it specifically applies to this case. And third, that it not only literally applies, but the policy behind that statute applies. Can I just ask you, I mean there's so many questions floating around here, but under Christensen, doesn't the fact that Vermont has only, if they only have one non-patent theory of proving their case, then it remains in State, this case should be heard in State Court. And if that is correct, then why, I know we've had a lot of debate about what the complaint covers and what it doesn't cover, but at least an aspect of it is the falsity of the statements in the letters. So if we conclude at least that one allegation is non-patent related under Christensen, why doesn't that resolve the whole question of whether or not they belong in the State Court? Because when the State amended its complaint, it retained a request for relief. They requested an injunction compelling NPSJ to comply with Vermont law in the future. I thought they amended, they subsequently amended that complaint to remove the injunction. They did. But when they filed the amended complaint, we now look at that complaint as a time that the relief was granted for the amendment. They retained the statement that they sought an injunction compelling compliance with Vermont law. They didn't specify the law. Okay, so let's assume hypothetically that we were to agree with the other side and choose to ignore it to suggest that they've taken that out, the injunction request out of the complaint, and therefore let's look at the complaint in the absence of the injunction request. Can I clarify one point? Yes. There were two requests for an injunction in the original complaint. One request for an injunction was an injunction that we be forbidden from ever sending a letter related to our patents into Vermont ever again. The second one was that we separately be compelled to comply with Vermont law in the future. Two different requests. The one they removed at the district court's suggestion to try to preserve federal jurisdiction at the hearing, the one they moved for amendment to remove was the one that would have joined us from ever sending a letter again. The one they retained in the amended complaint was the one that required or sought an injunction compelling us to comply with Vermont law. That was kept in. That was not removed. Okay. Now, but so when you're saying Vermont law, you're saying that by definition that added in any reference to any laws that have been passed in the interim and wasn't limited to the Consumer Protection Act that was originally the predicate for the lawsuit? That's right. But when they say, well, they want to seek an injunction compelling us to comply with Vermont law and use that generic reference, okay, have they chosen in their amended complaint to now that the BFA is the law, part of the law of Vermont, and they're aware of that, have they chosen to only seek relief under the BCPA when they amended that complaint to remove that one injunction request? They could have amended the second request for relief to say we're only seeking an injunction compelling compliance with the BCPA. But they didn't do that. And they could have done that. Instead, they retained the request for injunction compelling compliance with Vermont law. There is no doubt that had we not raised, removed the case again, and we were in state court, and were liability to be found because the court ignores this court's law as well, Trotter, that they would be seeking relief for requirements to comply with both the BFA Act and the BCPA Act. And they would say then that we were clearly unnoticed of that because at the time they amended the complaint, the BFA was part of the law. Okay. But let me ask you hypothetically, purely hypothetically, if in fact it were clear in the complaint, if they said we are only pursuing this under the consumer protection law and not under the, I forget the acronyms, BEES, whatever the new law is, would you be satisfied that this case belongs in state court? I think no. We think it should have belonged in federal court to begin with. Right. Right. Given where we are. Given where we are, yes. Our case relies upon here, the removal under 1442A2 as we sit now, relies upon the request for relief seeking to compel an injunction not to comply with Vermont law at the time the amended complaint was filed. In other words, but just to... If it proves that the BFA is not part of that law, then I would agree that our basis for removal is in the court. Okay. Thank you. We don't disagree that the complaint was styled to BCPA and that they're seeking liability under the BCPA. But 1442 doesn't talk about what the liability is based on. It talks about what's the effect of the case. If you go look at 1442, it requires four things. A civil action brought in state court against a property holder, or clearly a property holder, whose title is derived from a federal officer. There's no doubt that patents have titles and that title is derived from a federal officer. Where the lawsuit affects, where the success of the lawsuit would affect the validity of the U.S. law. Well, that's where I want to zero in. Because I think that in fairness, some of the arguments that your opponent make on the first three prongs are a little weak. But on that fourth prong, I just don't see how this affects the validity of the Patent Act. Sure. I can explain it in two ways. It may be that the Patent Act would preempt, but I don't see how it affects its validity. So the effects of validity, if you look at the cases of Benitez and Tana Davis and others, that's been looked at primarily as it affects the law if it impairs the rights of the patent owner or frustrates the rights of the patent owner or the property owner, the federally derived property right. Separately, the state says, no, you have to actually challenge the validity of the law. We think here, we satisfy either test. We think the correct test, and if you look at the history of this act, the history of this act goes back, you can read Stratford and the Supreme Court case in Mason, which gives some of the history. This was passed because South Carolina didn't like federal law, which allowed a federal tax revenue officer to seize property and sell it to others. So under state law, it was provided you could sue the owner of the property and get it transferred back to someone else. So they were not seeking, that suit did not say, we think that federal law is invalid. It simply frustrated the purpose of the law, which is to give someone else the rights to the property. Looking ahead to the future, whichever court you're in, these issues are all material, are they not, to what happens next? Let's say that we agree that for one reason or another, you ought to be in the district court. These state issues, nonetheless, are relevant, are they not? They're within the court's jurisdiction. And if you do our return to the state court, nonetheless, the patent issues are as relevant, are they not, to what the state has charged you with? Or is it entirely a question of which judge makes the decision on the same issue? The reason Congress, in theory, yes. In theory, they would be considered by both courts. Congress passed 1442A2 for the express purpose of not letting the state court and state law interfere with rights that are granted by the federal government. It's a federal issue, where the state's trying to interfere with those rights. And so, while... Is that really what 1442 was all about? You've got an Ex parte Young Lawsuit, why isn't that sufficient? Because 1442A2, that under... We have that civil rights case going, but that court has now ruled that the issues that are pending in state court can't be heard in federal court. Now, what I think that means is we go all the way through the process in state court, and if they violate our First Amendment rights, we will then go to state and federal court and proceed from there and come back to the judicial. So the Ex parte Young Lawsuit has been stayed pending the... He stayed the case saying that any issues that was in the state court case, or this case that's been remanded, have to be heard in state court and are stayed... He retained, for the moment, the case under the BFA Act, because he has a view that it's not part of this case. Oh, well that's a pretty relevant consideration. So he is going forward with the whole... Well, the state has moved for reconsideration, and so that's up in the air, but he did keep it for now, subject to the motion for reconsideration. So what would happen were you to... Because he construed the complaint as only covering the Vermont Consumer Lawsuit. Right. And the reason we think that's error is this. He was focused on what the liability was based upon. When 1442 focuses on what's the effect of the suit, the effect of the suit would be to allow the state to compel us to comply with the BFA. And going back to your point, that does impair our rights under the patent law and under the First Amendment. That's very important. But wouldn't you have an argument in state court that that broad injunction is not justified based on the liability basis for the complaint? Yes, but we're entitled to have that heard in federal court, not state court. That's what Congress intended, and they did... But you are having it heard in federal court, because you just... I mean, the whole issue about the new statute, the BFA, whatever, is being heard in federal court, right? No. What will happen is we go back to state court, and we were to lose on liability, then the And Vermont law includes the BFA. That would be what they would say, and they would say, at that time, we were on notice of it. Now, if they want to sit here and, say, verbally rewrite their complaint and say, oh, now we're not going to seek that, that's not what you base jurisdiction on. You base it on the complaint they wrote, not the one they wish they wrote. But I want to go back to the question Judge O'Malley asked. This is the most critical issue in this case. This court, and every other regional circuit that considers the matter, has reviewed the First Amendment right to petition to protect parties in sending priesthood letters from suits like this, unless the conduct was objectively baseless and subjectively baseless. That's in the law. That's the First Amendment. Vermont's position is that this court's rule in globe charter in later cases does not apply in Vermont. They've expressly said that. They've expressly said they can pursue the state law case in state court without establishing objective baselessness and subjective baselessness. The BFA Act, and the reason it directly affects the validity of the law and challenges the validity of U.S. law, is it's directly related to sending patent letters, and it's directly related, and it directly allows you to have liability under that Act without proving the predicate requirement of objective baselessness and subjective baselessness. You simply have to ask the state when they get up here, do they think they're obligated, in the context of somebody sending a patent letter, to do what globe charter says, prove the predicate basis of the First Amendment, that the conduct was objectively baseless. Ultimately, you can assert a First Amendment defense in state court, correct? Yes, we can certainly assert it. Just because the state attorney general might be arguing one thing as it relates to the application of the First Amendment, doesn't mean either that the state court will adopt that argument, or that ultimately the U.S. Supreme Court would endorse that argument. Congress says that when you've got federally derived property rights, they want those cases heard by federal court. Just as it's true we can bring them to state court, they can make the argument in federal court, and Congress says under 1442 they want those arguments heard in federal court, and that's where they should be heard, and there's a good reason. This court has a long body of law under Red Wing on personal jurisdiction that construes the 14th Amendment due process clause to not subject a patent owner to personal jurisdiction in the state simply because they send a patent demand letter or a patent inquiry letter. We've already had the personal jurisdiction ruling in state court in Vermont, and they expressly contradicted this law. We have a decision by a federal district court in the Eastern District of Louisiana, which we cite in our briefs, which applied this court's law correctly and found there couldn't be personal jurisdiction over us in the state simply because we sent a letter inquiring about patent infringement. Vermont state court has expressly rejected that and gone the other way. So we're perfectly legitimate that Congress's fear of passing 1442 is going to apply here, that our First Amendment rights will not be honored in state court as they would be in Vermont. Okay. Why don't we reserve the rest of the group. I don't think we have time. Ms. Faye? May it please the Court. My name is Bridget Acy. I represent the state of Vermont in this case. MPHJ's second effort to remove this case was untimely. It was an improper effort to re-litigate the first removal, and further, they have no basis        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Does this complaint cover the new statute? No, it does not, Your Honor. Are you willing to stipulate that? We have asserted that repeatedly in filings in multiple courts, that we are not asserting a claim under the new statute and we are not seeking a relief under that statute. And you're not seeking an injunction that would require them to comply with that statute? No, we're not Your Honor. Our lawsuit, as the district court has recognized in both of its decisions in this case, is brought under the Vermont Consumer Protection Act. It's captioned that way, the claims are cited under the Consumer Protection Act. Well, why didn't the district amend the complaint much earlier to just get rid of this whole issue? Your Honor, it was decided by the district court, in the context of the first removal in remand, that the case was brought under the Vermont Consumer Protection Act. It was not known to anyone on the state side that the new statute was considered to be part of the case until the second removal notice was filed. So it wasn't an issue to be addressed. The state's position has been consistent on this point and again, the district court has agreed with that position twice. That's not the relief that we're seeking. Your position, and you've repeated it in your brief, is that there's nothing at all to prevent these patentees from proceeding tomorrow with the patent cases in Vermont? That's right, there's no relief in place, there's no order in place against MPHJ that would prevent that. And no intention at all? How do you foresee this interaction to work? It's quite clear and I think the state has recognized that there is a defense to the charges in the statute that these are straightforward, legitimate federal patent actions. Isn't that right? That evidence has to be part of the state's case and again, looking at your reply brief and the insistence that you have no interest whatsoever in intervening or interfering with a straightforward patent enforcement action in Vermont. How do you put all of that together? We put it together this way, Your Honor. It's our claim, it's been our consistent claim in the case that communications that MPHJ sent to targets in Vermont contained deceptive, false, and misleading statements and that those statements violate our state consumer protection law and that the First Amendment is not a defense to that and that they are not, in fact, straightforward patent inquiry letters. So MPHJ has a defense, it seeks to raise that defense. When the case is litigated on the merits, if it's returned to state court, they can litigate their preemption defense and we fully expect that the state court will, in the context of either a trial on the merits or summary judgment, vet all of those issues. But are you attempting to prevent them from enforcing their patent rights? We're asking for relief from the state court that would require them to comply with the Consumer Protection Act going forward, which would certainly not prevent them from enforcing legitimate patent rights in the state court. But you're saying that the only way they could enforce a legitimate patent right would be to file a lawsuit? No, Your Honor. Because if they send a letter, then they're at risk of having violated some injunction that you've got put in place. We have not taken that position, Your Honor. I mean, the state court hasn't had a chance to reach the merits. There's been no vetting of the issue of what perspective injunctive relief would be in place if the state court rules in the state's favor. And it's quite possible that an injunction could permit certain communications and not others. Again, our allegations are not targeted at the patents themselves or at what MPHA considers a straightforward inquiry letter. Our allegations in the complaint, which we want the opportunity to prove in state court, is that the letters themselves were deceptive and misleading in material respect. Okay, well, I get that. But in the complaint, I guess what seems dubious to me is at least one of the allegations, and this is in paragraph 55, charges sending letters that threaten patent infringement litigation with no independent evidence that the recipients were infringing its patents. That seems to me very much a federal patent question and not a deceptive. I understand that some of the allegations could be construed as being outside of the Patent Act, but this seems to me requiring an inquiry as to the evidence and the validity of the evidence with regard to whether or not there's an appropriate infringement allegation or not. Isn't that very much a Federal Patent Act question? I disagree, Your Honor, for this reason. Again, our allegations are directed at the specific communications that MPHA sent into Vermont. And what those letters said, which are in the record here, the first letter said, we have identified you as someone who appears to be using the patented technology. It's almost certain that the target is using the technology. So the allegations that we're getting at are that those statements, which MPHA didn't have to make, those statements were false and misleading if in fact MPHA did not have the evidence they claimed to have. So it isn't that sending a letter which merely says, is it possible you might be infringing this patent that we have, would violate the Consumer Protection Act. Our case is targeted at the specific communications that they sent to Vermont, which contain very specific statements that represent that some investigation has taken place and that make representations about licenses that have been paid by others and the reasonable price for a license based on that conduct. If those representations are misleading, we believe that's a violation of state law. Those issues, however, are not before the Court at this time. What's before the Court here is the second removal, which is procedurally flawed in several respects. First of all, first removal settled the question of whether there was arising under federal jurisdiction. And that issue could not be revisited by MPHA. Well, from the face of the complaint. From the face of the complaint, correct. From the face of the complaint. After the AIA, there's all different ways to get, including counterclaim, to get federal jurisdiction. And MPHA did not assert that in its first removal. So again, that issue was settled by the first removal. The only way that a second removal could be permissible is if an amended complaint had added a new basis for removal or so substantially changed the nature of the action that it was essentially a new action. And here, all that the state did was remove a request for release. The amended complaint narrowed the scope of the complaint. It did not expand it. So this effort to remove a second time is, first of all, procedurally improper because it's really an effort to relitigate the first removal question, which is settled and can't be revisited under federal law. Second, even if the amended complaint had somehow triggered a new basis for removal, and again, we contend that it did not, that amended complaint was filed in state court as a matter of right on May 7th, 2014. And MPHA did not file the second removal notice for over four months. It was well out of time, even if it had had a second option. But there was a pending motion to amend, correct, that ultimately was granted. There was no order saying that that motion to amend was moved. No, Your Honor. I disagree. It is true, of course, that the state court eventually decided to grant a motion that had been filed in federal court, which was captioned a conditional motion to amend. But the federal and state provisions for amended pleadings are different. The federal provision for amending a pleading has a time limit on it, and in federal court we were out of time and needed permission to amend. In state court, you can amend a complaint as a matter of right until a response to pleading is filed. When we filed the conditional motion in federal court, we explained in that filing that if it was remanded without the motion being addressed, it would remand with the amendment pending and it would take effect as a matter of course. When we filed the amended complaint in state court, the filing letter said we were filing as a matter of right under the state rule, and in addition, MPHJ itself recognized in its own filing in state court that the amended complaint had been filed and was effective and had triggered its obligation to respond. So you can see that the date chosen by the district court was just wrong. It's September. We disagree with the state court's point on this, and I think where the federal court went wrong on that point is that the district court was focused on what the state court judge had thought at the time about the motion. I think that's been a mistaken analysis. The question is, did the May 7th filing trigger as a matter of federal law MPHJ's removal  and clearly MPHJ realized that the amended complaint was triggered. There's no suggestion at the state court hearing conference, the transcript of which is also in the record, that any party thought that there was a motion to amend pending. In fact, MPHJ's counsel at that hearing says, we think they need to file a motion to amend and they haven't, and the judge says, I think you're wrong, but if you want to move to strike the complaint, go ahead and maybe look at it. So, we think it's uncontroverted based on the record that any removal period that could have been connected to the amended complaint expired months before the second removal was filed. I know that it hasn't been raised on appeal, but I don't understand why the 1454 removal wouldn't have been both timely and appropriate. The 1454 removal is not appealable, so that issue is also not before this court. And MPHJ has acknowledged that in its briefs. I understand that, but would you agree that if it were appealable, that it would have been both timely and appropriate? No, Your Honor, it was neither timely nor appropriate because if MPHJ had wanted to assert counterclaim, it could have done so in connection with the complaint and the first removal. But 1454 depends on the assertion of a counterclaim, not the fact that you might be able to. Your Honor, there's very little case law on 1454 because it is so new. But the cases that we have briefed in the district court, because we did brief this issue in the district court, the cases that had been decided had recognized that the assertion of a counterclaim could not be the relevant time frame for removal because it would promote delay and put the removal process into such uncertainty and in the control of the defendant. And so, the couple of district court cases that we had found at the time of the briefing in district court, I believe, had recognized that it had to be, again, the receipt of a pleading that would have prompted a defendant to ascertain a better basis to assert the counterclaim. And that would be the result that would be consistent with the purposes of the removal statute, which is to settle jurisdictional questions at the outset and quickly. And here, of course, the jurisdictional issues have been litigated for over two years. The state has not been able to litigate this case on the merits despite two remands by the district court. I'd like to just briefly address the applicability of the federal officer removal statute here as well. Again, we think there are multiple reasons why the court did not reach that point, but there's no reason to believe that Congress intended this provision of removal law to have anything to do with patent issues. To begin with, sort of the end of the statute first. The statute does require that the underlying litigation affect the validity of a federal law. And again, here, as the district court correctly held, the dispute in this case about the relevance of federal law is a preemption question. It's a question of what federal law applies. Our complaint does not challenge the validity of any federal law, much less federal patent law. But you don't really claim that patent rights aren't rights conferred by a federal officer, do you? We dispute that this statute, which applies to property holders who derive title from a federal officer, was intended to sweep in patent owners. But on its face, it does, doesn't it? I mean, your argument that somehow they got their title from someone else because they got their patent later, that seems a little strange. I mean, the patent itself is what was issued as the right that exists, and it derives from the act of a federal officer, correct? Again, Your Honor, I think the statute uses particular language about the title derives from a federal officer. And I think it would be really quite unlikely that Congress would have used a phrase like that, which is so rooted in property law, in real property law. And in the statute, its history clearly related to the conveyance of real property under the color of federal law to apply to intellectual property rights. And in addition, ownership interests in intellectual property rights are generally a matter of state law. So although the rights have an origin in federal law, to describe the title in intellectual property as deriving from a federal officer is quite strange. And I think that, taken together with the fact that other provisions of federal law provide a basis for removal when cases arise under the patent law, and indeed now there's 1454, which is specifically addressed as an issue, that to interpret this statute, which applies to federal officers and property derived from federal officers, as somehow sweeping in patent issues, would be an unreasonable reading of the statute. Thank you. I'd like to make just a few points in rebuttal. First of all, the issue of whether we were timely is really decided by the fact that the state court granted their motion. And that's clear to the day from which it'd be triggered. We don't agree with what they say about what happened in the hearing before, and we think you can read in context and see what happened there. But it's decided by the fact that the court didn't dismiss the motion as moot. They granted it, and they waived their right to amend it as a right once they filed the motion. We signed a case law that effectively didn't respond. As to 1454, this clearly was removable under 1454 when we filed those counterclaims. The problem is, is that we read 1447d, it doesn't include as one of the things that is repeatable a decision to remand when it's removed under 1454. We think Congress overlooked that in the last reform law, and we would suggest to the court that perhaps you'd recommend that be fixed, but we didn't see that it was repeatable from what we could tell. I want to turn to the substance of the case. Vermont says they're not trying to affect legitimate patent owner's rights, and they say we've made deceptive statements. Let's look at what their complaint actually says. Just go read paragraphs 56 and 57. Their allegation is that we violated Vermont's civil law because we sent letters inquiring about patent infringement to companies that were too small. There's no such defense as too small in the patent law. They say we inquired about patent infringement without having sufficient proof of the infringement. By definition, all we could have was a reasonable suspicion these companies were infringing and send an inquiry letter, as this court required in Juden. We couldn't have proof of the infringement before we sent a letter inquiring us to infringement. They say it violates Vermont law to use a licensing subsidiary to license your patents. Clearly something permitted by patent law. They say you can't threaten suit unless you actually sue. Now we did intend to sue the people who were infringing and got disrupted by this case, but this court has an express case. Golan and G.P. Industries, one of the two, that specifically says you can threaten to sue even if you don't intend to sue in certain circumstances, which would apply here. Finally, this deceptive statement about the royalty. We had licenses with other companies based on the savings model for the royalty up to $1,200 per employee for a particular company. The average royalty had been $833 per employee. What the letter says, and you can read it, is it says we've concluded that a fair royalty is $1,050 per employee. The state's position is that's deceptive, to say we conclude that a fair royalty is $1,050 per employee because you've averaged $833 per employee. Plainly, that's not deceptive. Fundamentally, the state says they can send some kind of letters that say some things and not others. They're editing our letter. That's what the First Amendment rights petition is about. The court reads Globetrotter and Direct TV, which is Sosa versus Direct TV, and MAG News. You'll see that the policy is to allow people the immunity and the freedom to send patent letters to encourage people to send letters and not litigate first. That policy is violated if you don't protect our First Amendment rights, which we think 1448-2 is meant to do. Thank you. Thank you both counsel. The case is submitted and that concludes our proceedings for this morning. All rise. The honorable court is adjourned until tomorrow morning at 10 o'clock a.m. Thank you.